IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAMELA K. BIRKINSHAW,              )
                                   )
                  Plaintiff,       )
                                   )      CIVIL ACTION
v.                                 )
                                   )      No. 06-4068-JAR-JTR
                                   )
MICHAEL J. ASTRUE,[1]              )
Commissioner of Social Security,   )
                                   )
                  Defendant.       )
_____)

REPORT AND RECOMMENDATION

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits and supplemental security income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  The matter has been referred to this court for a report and recommendation.  The court recommends the Commissioner's decision be REVERSED and the case REMANDED for further proceedings pursuant to this opinion.

_____

[1]On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

I.   **Background**

Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially and upon reconsideration.  (R. 25, 36-41)[2].  Proceedings were held before an Administrative Law Judge (ALJ) who determined plaintiff is not disabled, and plaintiff sought and was granted review by the Appeals Council.  (R. 53-81).  While review was pending, and after expiration of her insured status, plaintiff filed another application for supplemental security income.  (R. 25, 81).  The Appeals Council vacated the first decision, remanded for further proceedings, and ordered the ALJ to issue a decision on all pending claims.  (R. 79-81).

On remand, a different ALJ was assigned to the case, and he held another hearing on Oct. 19, 2005.  (R. 25, 1032-1116).  At this hearing, plaintiff was represented by counsel, and testimony was taken from plaintiff, two medical experts (a rheumatologist, and a psychologist), and a vocational expert.  (R. 25, 1032, 1033).  On Nov. 9, 2005, the ALJ issued a decision in which he found plaintiff is not disabled within the meaning of the Act, and denied plaintiff's applications.  (R. 25-35).

---

[2]As plaintiff and the Commissioner agree, documents relating to plaintiff's applications for supplemental security income were erroneously omitted from the administrative record filed with the court.  (Pl. Br., 2, n.2); (Comm'r Br., 1, n.2).  However, neither party asserts the missing documents are necessary to the court's review.

The ALJ found that plaintiff has not performed substantial gainful activity since her alleged onset of disability. (R. 27). He found that plaintiff has numerous severe impairments including fibromyalgia, chronic pain syndrome, restless leg syndrome, total left knee arthroplasty in 1991 with a revision in 1996, bilateral shoulder surgeries in 1998, bilateral carpal tunnel syndrome, plantar fasciitis, and cervical disc bulging with stenosis, but that none of her impairments singly or in combination meets or equals the severity of an impairment in the Listing of Impairments. (R. 27-28).

The ALJ found plaintiff's allegations of the severity of symptoms resulting from her impairments are not credible. (R. 30). He discussed medical records and medical opinions including: the opinions of the medical experts who testified at the hearing, Drs. Karsh and Cools (R. 27, 28, 30, 31); a mental status examination report containing the opinions of a consultant psychologist, Dr. Ohlde (R. 30-31); treatment records of neurologists, Drs. Swanson and Stein (R. 30); and medical source statements regarding plaintiff's limitations completed by a treating rheumatologist, Dr. Letourneau, and a treating psychologist, Dr. Kimmitt. (R. 32). He determined he could not give "great weight" to the reports of Drs. Letourneau and Kemmitt. Id. He assessed plaintiff with a residual functional

capacity including exertional and non-exertional limitations which would allow a restricted range of light work.  (R. 31-32).

Based upon the vocational expert's testimony, the ALJ found plaintiff cannot perform her past relevant work.  (R. 33).  He found that plaintiff is an individual "closely approaching advanced age" with a high school education and no transferable skills acquired from her past relevant work.  Id.  Based upon the vocational expert's testimony, and plaintiff's age, education, work experience, and residual functional capacity (RFC), the ALJ determined plaintiff is able to perform work existing in significant numbers in the economy, such as work as a light packager, copymachine operator, and microfilm operator.  (R. 33, 35).  Consequently, he found plaintiff is not disabled within the meaning of the Act, and denied her applications.  (R. 35).

Plaintiff disagreed with the second ALJ's decision and again sought review by the Appeals Council.  (R. 15-21).  The Appeals Council found no reason to review the decision and denied review.  (R. 11-14).  Therefore, the second ALJ's decision is the final decision of the Commissioner.  (R. 11); Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003).  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of

the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion. Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability to work must last twelve months). The claimant's

impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.; 20 C.F.R. §§ 404.1520, 416.920 (2005).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If plaintiff's impairment does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform her past relevant work, and whether she is able to perform other work in

-6-

the national economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in his step three evaluation, in evaluating plaintiff's fibromyalgia, in evaluating the treating source opinions of Drs. Letourneau and Kimmitt, and in evaluating the credibility of plaintiff's allegations of disabling symptoms; all resulting in an erroneous RFC assessment upon which the vocational expert relied and provided faulty testimony regarding the availability of jobs in the economy.  She claims the Commissioner has failed to satisfy his burden of proof at step five and has unjustifiably delayed the proceedings, and additional fact-finding would serve no useful purpose. Therefore, in plaintiff's view, the only appropriate remedy is remand for an immediate award of benefits.  In response, the Commissioner argues the ALJ performed a proper step three evaluation, properly evaluated the medical opinions and the credibility of plaintiff's allegations of disabling symptoms, and the ALJ's RFC assessment is supported by substantial evidence in the record as a whole.  The Commissioner argues that the

vocational expert's testimony, based upon the ALJ's properly supported RFC assessment, provides a sufficient basis to find that there are a significant number of jobs in the economy of which plaintiff is capable.  Therefore, in the Commissioner's view, the ALJ's decision should be affirmed.  The court will address the issues raised in the order in which they would arise in applying the sequential evaluation process, beginning with the ALJ's evaluation of plaintiff's fibromyalgia at step two of the process.

## III. Step Two Evaluation of Fibromyalgia

The inquiry at step two is whether plaintiff has one or more, or a combination of, impairments which is "severe" within the meaning of the Act and the Regulations.  20 C.F.R. §§ 404.1520(c), 404.1523, 416.920(c), 416.923.  The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need only show that an impairment would have more than a minimal effect on his ability to do basic work activities.  Williams, 844 F.2d at 751.  However, he must show more than the mere presence of a condition or ailment.  Id. (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).

As plaintiff admits, the ALJ found plaintiff has severe impairments including fibromyalgia.  (Pl. Br., 45); see (R. 27). However, plaintiff asserted, "the ALJ found Plaintiff's diagnosis of fibromyalgia to be severe in an effort to appear to have properly considered it, although he had not."  (Pl. Br., 46). Plaintiff argued that the ALJ "adopted the opinion of Dr. Karsh [the medical expert] in its entirety."  (Pl. Br., 47). Therefore, she addressed Dr. Karsh's testimony and the ALJ's findings as one and the same.  Id.  Plaintiff argued that Dr. Karsh erroneously testified:  (1) based merely on generalizations and speculation, (2) that the pain experienced from fibromyalgia is more psychological than physical, and (3) that Dr. Karsh does not believe in the diagnosis of fibromyalgia.  (Pl. Br., 47-50).

To the extent plaintiff is arguing that the ALJ improperly weighed the opinions of the medical expert, Dr. Karsh, and her treating physician, Dr. Letourneau, the court agrees, and addresses that argument later in this opinion.  To the extent plaintiff is arguing that Dr. Karsh's opinions are erroneous and cannot be admitted or considered by the ALJ, she has waived that argument, and does not point to record evidence or legal authority which establishes unequivocally that Dr. Karsh's opinions are erroneous and inadmissible.

At the hearing, the ALJ questioned Dr. Karsh and established that he is a medical doctor, specializing in internal medicine

and rheumatology, and that Exhibit 17B is a true and accurate
list of the doctor's professional qualifications.  (R. 1037).
The ALJ then addressed plaintiff's counsel:  "Mr. Johnson, will
you waive further laying of foundation for Dr. Karsh's
testimony?"  Id.  Counsel responded, "So waived, Your Honor."
Id.  Plaintiff made no contemporaneous objection to any of the
testimony of Dr. Karsh.  Therefore, plaintiff cannot now object
to the admission of Dr. Karsh's medical opinions.

Moreover, plaintiff does not establish that Dr. Karsh's
opinions are erroneous.  As plaintiff notes, her treating
physician, Dr. Letourneau stated, "The only way the severity [of
fibromyalgia] can be judged is by the patient's historical report
as the trigger points tend to remain even if there is less
discomfort on an objective standpoint."  (R. 349)(emphasis
added); see (Pl. Br., 47)(quoting (R. 349)).  Plaintiff
complains, however, that Dr. Karsh erroneously believes "the
trigger points have no specific meaning and are related to the
patient's general stress more so than actual pain."  (Pl. Br.,
47)(citing (R. 1039)).  She argues that Dr. Karsh believes "the
pain experienced by many patients with fibromyalgia is more
psychological than physical," because the expert evaluated the
severity of plaintiff's impairment under the Listing for
somatoform disorders.  (Pl. Br., 47-48).

Plaintiff misapprehends Dr. Karsh's testimony.  Similar to Dr. Letournea's statement that trigger points tend to remain even if there is less discomfort, Dr. Karsh testified,

> The tender points which are supposed to have some
> specificity we no longer believe to have great
> specificity, since patients describe this fibromyalgia
> tend to have tenderness all over and pain all over.
> And another expert, Dr. Daniel Clow [phonetic], has
> pointed out that as a matter of fact these tender
> points correlate better with the patient's general
> stress than with pain at those sites.

(R. 1039).  Dr. Karsh testified that in his opinion plaintiff's condition does not meet or equal a listing, and noted that, because there is no listing for fibromyalgia or chronic pain syndrome, he had also considered her condition pursuant to the listing for somatoform disorder.  (R. 1046-47).  When the ALJ expressed concern that somatoform disorder is a mental disorder, not a physical disorder, Dr. Karsh responded, "This is not a somatoform disorder.  It's just the closest resemblance [for considering a listing]."  (R. 1047).

Dr. Karsh recognized that plaintiff had been diagnosed with fibromyalgia.  (R. 1038, 1043).  He explained what criteria must be met in order to make a diagnosis of fibromyalgia.  (R. 1038-39).  He explained that plaintiff's symptoms are not a somatoform disorder.  (R. 1047).  He explained how fibromyalgia is usually treated.  (R. 1039-40).  He explained that he would call such a condition "chronic pain syndrome."  (R. 1059).  He also

acknowledged that the pain is real and can be disabling.  (R. 1050-51).

None of the authority to which plaintiff cites in her brief compels a finding that Dr. Karsh's testimony regarding fibromyalgia or chronic pain syndrome is erroneous or that the ALJ may not admit such testimony and, in a proper circumstance, rely upon it.  The court finds no error in the ALJ's admitting and considering the medical opinions of Dr. Karsh when evaluating plaintiff's fibromyalgia.

**IV.  Step Three Evaluation**

The ALJ determined plaintiff's impairments, singly or in combination, do not meet or equal the severity of a listed impairment.  To support this determination, the ALJ noted the medical experts testified that none of plaintiff's impairments meet or equal a listing, the ALJ stated an extensive list of medical criteria which are necessary to a finding that plaintiff meets or equals various listings but which are not present in the evidence in this case, and he stated that plaintiff and her attorney were not contending plaintiff meets or equals a listing. (R. 28).

Citing <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir. 1996), plaintiff claims the ALJ erred in failing to cite specific listings he considered and in failing to cite specific evidence used in finding plaintiff does not meet a listing.  She also

claims she specifically argued that her condition meets or equals
listing 12.04 or listing 12.06 contrary to the ALJ's statement.
The Commissioner argues that the ALJ thoroughly evaluated the
evidence and noted the criteria which are missing in order for
plaintiff to show that her condition meets a listing, and that
plaintiff fails to point to any evidence supporting a finding
that her condition meets or equals a listing.

Plaintiff "has the burden at step three of demonstrating,
through medical evidence, that his impairments 'meet <u>all</u> of the
specified medical criteria' contained in a particular listing."
<u>Riddle v. Halter</u>, No. 00-7043, 2001 WL 282344 at *1 (10th Cir.
Mar. 22, 2001) (quoting <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530
(1990) (emphasis in <u>Zebley</u>)); <u>see also</u>, <u>Thompson v. Sullivan</u>, 987
F.2d at 1482, 1487 (10th Cir. 1993)(burden shifts to Commissioner
at step five).  Plaintiff has not met her burden here.  While the
ALJ must explain his decision, he need not cite to affirmative
evidence which proves plaintiff does not meet a listing.  Here,
he stated criteria of the listings which are <u>not</u> reflected in the
evidence--thus demonstrating that plaintiff failed to meet her
burden.

Plaintiff correctly argues that she suggested her condition
meets Listing 12.04, or 12.06.  Therefore, in stating plaintiff
does not contend she meets or equals a listing, the ALJ erred.
Nonetheless, the error is harmless as the ALJ specifically found

that the evidence does <u>not</u> establish "marked deficits in activities of daily living, social functioning, or concentration, persistence or pace; episodes of decompensation or deterioration of extended duration (or high risk thereof), [or] an inability to function outside a highly supportive setting," at least one or more of which criteria must be established in order for plaintiff's condition to meet or equal a listing for a mental impairment.  (R. 28).  Therefore, the ALJ demonstrated that plaintiff's condition does not meet or equal Listing 12.04 or 12.06.  Plaintiff does not assert error in the ALJ's application of the psychiatric review technique and points to no evidence that is contrary to the ALJ's finding.  The court's review also found no contrary evidence.

Moreover, the evidence supports the ALJ's specific findings with regard to mental impairments.  As the ALJ noted, the medical expert, Dr. Cools, testified that plaintiff has only moderate restrictions in activities of daily living; social functioning; and maintaining concentration, persistence, or pace; no episodes of decompensation; and does not meet the "C" criteria of any mental listings.  (R. 27); <u>see also</u> (R. 1092-93)(Dr. Cools testimony).  The opinion of plaintiff's treating psychologist is not to the contrary.  Dr. Kimmitt found that plaintiff has only moderate limitations in activities of daily living, and maintaining social functioning; and seldom has deficiencies in

concentration, persistence, or pace; and Dr. Kimmitt did not rate

plaintiff with regard to episodes of decompensation.  (R. 688).

Nor does Clifton, 79 F.3d at 1009 require a different finding.

In that case, the court noted:

> the ALJ did not discuss the evidence or his reasons for
> determining that appellant was not disabled at step
> three, or even identify the relevant Listing or
> Listings; he merely stated a summary conclusion that
> appellant's impairments did not meet or equal any
> Listed Impairment.  Such a bare conclusion is beyond
> meaningful judicial review.

Clifton, 79 F.3d at 1009(citation to the administrative record

omitted).

Here, although the ALJ did not specify individual listings

which were considered, his decision does not consist of the bare,

summary conclusion identified in Clifton.  While it would have

been better for the ALJ to have stated the specific listings he

considered, and to have identified specific criteria which were

not met for each listing, the decision is sufficiently clear and

detailed to establish that plaintiff did not meet her step three

burden of proof and did not meet or equal a listing for mental

impairments as plaintiff alleged.  The court finds no reversible

error in the ALJ's step three evaluation.

## V.   Evaluation of Medical Opinions

Plaintiff claims the ALJ failed to properly evaluate the

medical opinions, did not indicate what weight he assigned the

opinions, and failed to properly examine the opinions of the

medical experts to see if they outweigh the treating physicians'
opinions.  The Commissioner first argues that the ALJ properly
evaluated the medical opinions, and then explains his view of how
the evidence supports the ALJ decision not to give "great weight"
to the opinions of the treating physicians, Drs. Letourneau and
Kimmitt.  The court agrees with plaintiff that the ALJ did not
apply the correct legal standard and evaluate the medical
opinions in accordance with the Regulations and Tenth Circuit
precedent.

### A.   Standard for Evaluating Medical Opinions

"Medical opinions are statements from physicians and
psychologists or other acceptable medical sources that reflect
judgments about the nature and severity of [a claimant's]
impairment(s) including [claimant's] symptoms, diagnosis and
prognosis."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such
opinions may not be ignored and, unless a treating source opinion
is given controlling weight, will be evaluated by the
Commissioner in accordance with factors contained in the
regulations.  Id. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's
Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2006).

A physician who has treated a patient frequently over an
extended period of time is expected to have insight into the
patient's medical condition.  Doyal v. Barnhart, 331 F.3d 758,
762 (10th Cir. 2003).  But, "the opinion of an examining

-16-

physician who only saw the claimant once is not entitled to the
sort of deferential treatment accorded to a treating physician's
opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374
(10th Cir. 1995)).  However, opinions of examining physicians are
generally given more weight than the opinions of physicians who
have merely reviewed the medical record.  Robinson v. Barnhart,
366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d
1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d
407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784,
789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d
955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's
opinion on the issue(s) of the nature and severity of [the
claimant's] impairment(s) [(1)] is well-supported by medically
acceptable clinical and laboratory diagnostic techniques and
[(2)] is not inconsistent with the other substantial evidence in
[claimant's] case record, [the Commissioner] will give it
controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2);
see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings
111-15 (Supp. 2006).

The Tenth Circuit has explained the nature of the inquiry
regarding a treating source's medical opinion.  Watkins v.
Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  The ALJ
determines "whether the opinion is 'well-supported by medically

acceptable clinical and laboratory diagnostic techniques.'" <u>Id.</u> at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must then determine whether the opinion is consistent with other substantial evidence in the record. <u>Id.</u> (citing SSR 96-2p). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." <u>Id.</u>

If the treating source opinion is not given controlling weight, the inquiry does not end. <u>Id.</u> A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." <u>Id.</u> The regulatory factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Id.</u> at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see</u> <u>also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Serv.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives a treating source opinion.  <u>Id.</u> 350 F.3d at 1301.

> When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[]' the treating physician's report, not the other way around."  <u>Reyes v. Bowen</u>, 845 F.2d 242, 245 (10th Cir. 1988).  The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled.  <u>Frey [v. Bowen]</u>, 816 F.2d [508,] 513 [(10th Cir. 1987)]

<u>Goatcher</u>, 52 F.3d at 289–90.

## B.   The ALJ's Findings Regarding Medical Opinions

The ALJ discussed many of the opinions of the medical experts, Drs. Karsh and Cools.  (R. 27, 28, 30, 31).  He discussed treatment notes from Dr. Swanson and Dr. Stein, but did not mention or evaluate any specific opinions of those doctors. (R. 30).  He discussed a mental status examination performed by Dr. Ohlde and quoted the doctor's opinion, "Overall, her [plaintiff's] concentration/attention and social skills were adequate.  She adapted adequately to the interview and persisted in performing mental status and assessment tasks.  Thus, she is probably capable of concentrating, adapting, and persisting in completion of tasks fitting her low average intelligence and fair memory."  (R. 31)(quoting Dr. Ohlde's report, found at (R. 480)).

The record contains 109 pages of treatment notes from Dr. Letourneau's office indicating he treated plaintiff between Dec.

13, 1996 and Oct. 11, 2004.  (R. 313-68, 483-90, 527-37, 763-96).
It contains twenty-three pages of treatment notes from Dr.
Kimmitt indicating she treated plaintiff between Dec. 15, 1999
and Oct. 20, 2004.  (R. 797-819).  The court quotes the ALJ's
entire discussion of those physicians' opinions or treatment
records:

> In making this assessment, the undersigned has also
> carefully considered the attorney-generated reports of
> Dr. E. Letourneau and Dr. Y. Kimmitt which contain
> work-related limitations in functioning that would
> ordinarily be considered disabling.  (ex. B21F, B24F)[3]
> However, the undersigned cannot give great weight to
> these reports as they are inconsistent with claimant's
> demonstrated good level of ability and the other
> evidence described above, including the testimony of
> both medical experts, which demonstrates that claimant
> has retained the capacity for work within the residual
> functional capacity assessment set forth above.

(R. 32).

## C.  Discussion

The ALJ failed to include most of the requirements of a
proper medical opinion evaluation.  The ALJ did not mention that
Drs. Letourneau and Kimmitt treated plaintiff over a period of
time and he did not decide whether they are "treating sources"
within the meaning of the Regulations.  The court cannot make
that determination in the first instance.  The ALJ did not
discuss whether the physicians opinions are well-supported by

---

[3]Although The ALJ cited Exhibits B21F and B24F, the reports
of the two physicians are found at Exhibits B22F and B24F.  (R.
674-77, 681-89).

medically acceptable clinical and laboratory diagnostic techniques.  There is no evidence the ALJ considered whether the opinions are supported by information contained in each physician's treatment notes.  In fact, the ALJ did not so much as mention the physicians' treatment notes.  The ALJ did not mention whether he considered whether the opinions should be given controlling weight.  He stated that he could not "give great weight to these reports," but he did not state what lesser weight the reports should be given.

The decision reveals that the ALJ considered regulatory factor four--consistency between the opinion and the record as a whole--but he did not cite to evidence which would support his finding that plaintiff has a "demonstrated good level of activity," or explain what specific "other evidence described above" is inconsistent with the physicians' opinions.  Four other regulatory factors relevant in this case were not mentioned with regard to Drs. Letourneau and Kimmitt: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; and (5) whether or not the physician is a specialist in the area upon which an opinion is rendered.

Further, assuming the ALJ determined Drs. Letourneau's and
Kimmitt's opinions were not "treating source" opinions or were
not worthy of controlling weight, there is no discussion in the
decision applying the regulatory factors and determining the
relative weight to be given each of the medical opinions.  The
ALJ quoted Dr. Ohlde's opinion favorably, but did not weigh it
using the regulatory factors, and did not specify of what weight
he found it worthy.  The ALJ discussed the opinions of the
medical experts extensively, and appears to have accepted the
opinions implicitly.  However, he did not weigh the experts'
opinions in light of the other medical opinions, did not weigh
them using the regulatory factors, and did not specify of what
weight he found them worthy.  Based upon the extensive treatment
history by Drs. Letourneau and Kimmitt, it is likely their
opinions will be found to be the opinions of "treating sources"
within the meaning of the regulations.  But, there is nothing in
the decision which would indicate that the ALJ examined the
medical experts' reports and Dr. Ohlde's report "to see if [they]
'outweigh[]' the treating physicians' reports.

In his response brief, the Commissioner argues that
substantial evidence in the record supports the ALJ's findings
that Dr. Letourneau's and Dr. Kimmitt's opinions are not entitled
to great weight, and he cites to evidence which, in his view,
supports those findings.  (Comm'r Br., 6-9).  While there may be

evidence in the record to justify such findings, the ALJ did not
cite to that evidence.  The court may not "create post-hoc
rationalizations to explain the Commissioner's treatment of
evidence when that treatment is not apparent from the
Commissioner's decision itself." Grogan v. Barnhart, 399 F.3d
1257, 1263 (10th Cir. 2005) (citing Allen v. Barnhart, 357 F.3d
1140, 1145 (10th Cir. 2004); and SEC v. Chenery Corp., 318 U.S.
80, 87 (1943)); see also, Knipe v. Heckler, 755 F.2d 141, 149
n.16 (10th Cir. 1985).  Thus, the court may not affirm on the
basis of the Commissioner's argument, which was not the basis for
the ALJ's decision.  Moreover, the Commissioner's brief does not
explain the deficiencies in the decision with regard to
evaluating the relative weight to be accorded to the various
medical opinions and does not explain how it was determined that
the opinions of the medical experts outweigh the opinions of the
treating physicians.  Remand is necessary for the Commissioner to
properly evaluate the medical opinions, explain the relative
weight to be accorded each opinion, and support the evaluation
with substantial evidence in the record.

     The court does not mean to imply that a medical expert's
opinion may never be found to outweigh the opinion of a treating
physician.  However, such a finding must be explained, must be
supported by substantial evidence in the record, and must account
for the fact that the medical expert merely reviewed the evidence

-23-

in the record and did not examine or treat the claimant as did
the treating physician.  The decision must explain why the
medical expert's opinion outweighs the opinion of the treating
physician.

## VI.  Remaining Assertions of Error

Plaintiff claims the ALJ erred in evaluating the credibility
of her allegations of disabling symptom, and that the combined
effect of the ALJ's errors resulted in an erroneous RFC
assessment upon which the vocational expert relied and provided
faulty testimony regarding the availability of jobs in the
economy.  Because a proper evaluation of the medical opinions
will require the Commissioner to reevaluate the credibility of
plaintiff's allegations of symptoms, and to reassess her residual
functional capacity, it would be premature for the court to
attempt to assign error to these aspects of the evaluation, and
improper for the court to attempt to provide an evaluation and
assessment at this time.  Therefore, on remand and after properly
evaluating the medical opinions, the Commissioner must reevaluate
the credibility of plaintiff's allegations, reassess plaintiff's
RFC, and, if necessary, propound additional hypothetical
questions to a vocational expert in order to properly complete
steps four and five of the sequential evaluation process.

## VII. Remand for Immediate Award of Benefits

Plaintiff seeks remand for immediate award of benefits, arguing that "the evidence currently in the record is sufficient to find that Plaintiff's conditions were severe and disabling since at least June 20, 1997," and the Commissioner has mishandled and delayed this case for more than ten years and has failed in meeting his burden of proof at step five.  (Pl. Br., 69-70).

Whether to remand the case for additional fact-finding or for an immediate award of benefits is within the discretion of the district court.  <u>Taylor v. Callahan</u>, 969 F. Supp. 664, 673 (D. Kan. 1997) (citing <u>Dixon v. Heckler</u>, 811 F.2d 506, 511 (10th Cir. 1987)).

Where remand for additional fact-finding would serve no useful purpose, the court may order an immediate award.  <u>Sorenson v. Bowen</u>, 888 F.2d 706, 713 (10th Cir. 1989).  The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. <u>Gilliland v. Heckler</u>, 786 F.2d 178, 184, 185 (3rd Cir. 1986). However, the Commissioner is not entitled to adjudicate a case <u>ad infinitum</u> until he correctly applies the proper legal standard and gathers evidence to support his conclusion.  <u>Sisco v. Dep't of Health & Human Serv.</u>, 10 F.3d 739, 746 (10th Cir. 1993).

While the court is aware that this case has been delayed and extended by erroneous decision and has previously been remanded by the Appeals Council merely to result in the decision which the court has determined is also erroneous, the court is also aware the evidence does not point but one way.  Moreover, as Dr. Letourneau and Dr. Karsh both noted, the severity of fibromyalgia rests substantially upon the credibility of the patient's report of symptoms.  Dr. Letournea and Dr. Kimmitt opined that plaintiff has limitations which would establish disability.  Dr. Karsh and Dr. Cools opined that plaintiff's limitations are not disabling. The medical opinions must be properly evaluated in order to resolve the issues presented in this case.  Therefore remand for further proceedings consistent with this opinion is the proper disposition of this case.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that JUDGMENT be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case to the Commissioner for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy.

Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Hill v. SmithKline Beecham Corp.</u>, 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 7th day of May 2007, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**

-27-